UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAKAISHA BAXTRON,

                              Plaintiff,

        v.                                   **DECISION AND ORDER**
                                                       14-CV-364S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                Defendant.

       1.       Plaintiff Lakaisha Baxtron challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since June 1, 2009, due to fibromyalgia, rheumatoid and inflammatory arthritis, swelling, and depression. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to payments of Supplemental Security Income benefits ("SSI") and Disability Insurance Benefits ("DIB") under the Act.

       2.       On August 4, 2011, Plaintiff submitted an application for SSI and DIB. Her applications were denied on October 29, 2011. Plaintiff requested an administrative hearing before an ALJ on November 18, 2011. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Donald T. McDougall on November 20, 2012. The ALJ considered the case *de novo*, and on December 7, 2012, denied Plaintiff's application for benefits and issued a decision finding that Plaintiff was not disabled. On February 1, 2013, Plaintiff requested review by the Appeals Council. On

March 18, 2014, the Appeals Council denied Plaintiff's request for review. On May 16, 2014, Plaintiff filed the current civil action challenging the ALJ's final decision.[1]

3. On October 17, 2014, Plaintiff filed a Motion for Judgment on the Pleadings (Docket No. 10). On March 18, 2015, the Government filed a Cross Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket No. 16). Plaintiff filed a response on April 7, 2015 (Docket No. 17). This Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is evidence that amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

---

[1] The ALJ's December 7, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In the present case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date of disability (R. at 19); (2) Plaintiff has the following severe impairments: chronic pain, fibromyalgia, and possible inflammatory arthritis[2] (R. at 19); (3) Plaintiff does not have an impairment or combination of impairments that medically meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. at 20-21); (4) Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as

---

[2] The ALJ expressly found that Plaintiff's anxiety and depression were non-severe impairments (R. at 20).

4

defined in 20 CFR 404.1567(b) and 416.967(b)[3]; and (5) Plaintiff is capable of performing past relevant work as a claims adjuster and collections representative (R. at 26). Thus, Plaintiff is not disabled or entitled to benefits as defined by the Act. (R. at 27).

10. Plaintiff challenges the ALJ's decision that she is not disabled. Plaintiff argues that the ALJ erred in determining that Plaintiff's anxiety and depression were not severe mental impairments limiting her ability to work. As detailed below, this argument is unfounded and must be rejected.

A claimant bears the burden of establishing that his or her impairment is "severe," meaning that it "significantly limit[s his or her] physical or mental ability to do basic work activities." See 20 CFR § 404.1521(a), 416.921(a); see also 20 CFR § 404.1520(c). Examples of basic work activities include the use of judgment, dealing with changes in a routine work setting, and responding appropriately to supervision, co-workers, and usual work situations. See 20 CFR §§ 404.1521(b), 416.921(b). Moreover, in determining whether a claimant suffers a mental impairment, it is required that the ALJ rate claimant's functioning in four broad functional areas including: activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and episodes of decompensation. See 20 CFR §§ 404.1520a(c)(3), 416.920a(c)(3). A mental impairment is usually considered non-severe if the claimant is rated "none" or "mild" in the first three broad functional areas, and "none" in the fourth functional area. See 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1).

In the present case, the ALJ determined at step two of the requisite analysis that Plaintiff's anxiety and depression were not severe. (R. at 20). Plaintiff asserts that, in

---

[3] Light work involves lifting no more than twenty pounds at one time and frequently lifting or carrying objects weighing up to ten pounds. See 20 CFR §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10.

5

making this determination, the ALJ mischaracterized the opinions of Dr. Baskin, the consultative examining psychologist, and Dr. Totin, the state agency review psychologist.

Plaintiff initially argues that the ALJ erred in determining that Dr. Baskin opined that Plaintiff would have minimal to no functional limitations, except those related to her physical impairments. (See R. 20.) She argues that Dr. Baskin instead found that Plaintiff "would have moderate limitations being able to deal with stress." (Pl's Mem of Law at 14-15). In so arguing, Plaintiff relies on that part of Dr. Baskin's report where the doctor states: "Plaintiff would have no limitations with following and understanding simple directions and instructions, or performing simple tasks independently." (Pl's Mem of Law at 14; see R. at 361). The "clear implication" of this finding, Plaintiff argues, is that she could not perform complex or detailed instructions or tasks. (Pl's Mem of Law at 14.) This argument is incorrect, inasmuch as Dr. Baskin goes on to expressly state that Plaintiff would have minimal to no functional limitations with respect to learning new tasks, performing complex tasks independently, making appropriate decisions, and relating adequately with others. (R. at 361).

Plaintiff highlights that Dr. Baskin also found that Plaintiff would have moderate limitations in being able to deal with stress, a finding that was adopted by Dr. Totin upon his review of Plaintiff's medical records. (R. 20, 361, 380.) The ALJ explained, however, that he was not crediting this moderate finding because, despite Plaintiff's portrayal of her limitations, her treating physician "took pains to emphasize the fleeting, or periodic nature of [such] problems." (R. 20; see R. 512.) Specifically, the ALJ relied on the assessment completed by Plaintiff's treating physician Dr. Siddiqui, who reported that

any mental functioning impairments were "episodic" or "periodic" (R. 20, 512.) Contrary to Plaintiff's argument, this terminology did not render the doctor's opinion "hopelessly vague." (Pl's Mem of Law at 16, 17-18.) Dr. Siddiqui noted that any work-related restrictions were expected to last no more than one to three months, and the ALJ specifically stated that his determination that there were no severe mental impairments was based in part on the failure to meet the twelve-month durational requirement. (R. 20, 512); see 20 C.F.R. §§ 404.1509 (an impairment must have lasted or be expected to last at least 12 months); 404.1520(a)(4)(ii) (requiring consideration of whether a severe impairment meets durational requirement). Further, Dr. Siddiqui noted these periodic problems with respect to only the area of attention and concentration, finding no evidence of limitation with respect to any other category of mental functioning. (R. 512.) Finally, contrary to Plaintiff's further argument, although referenced in the decision, there is no indication that the ALJ relied on a GAF score in discounting Dr. Totin's finding of a moderate limitation. Instead, the ALJ specifically stated he was relying on Dr. Siddiqui's report as well as Plaintiff's own testimony in declining to find more than a mild limitation with respect to daily living activities.

11. Plaintiff next argues that the ALJ erred by relying on Dr. Siddiqui's similarly "vague" opinion that her physical ailments were fleeting and periodic as well. (Pl's Mem of Law at 17-18.) As referenced by the ALJ, Dr. Siddiqui noted that Plaintiff had moderate physical limitations, but only episodically. (R. 25, 512.) In response to a question regarding work limitations, the doctor specifically stated that Plaintiff had "multiple, fleeting arthralgias[4]" and noted (as stated above) that any resulting limitation was expected to last no more than three months. (R. 512.) In giving weight to this

---

[4] An arthralgia is a "pain in one or more joints." Merriam-Webster's Medical Desk Dictionary (1993).

7

report, the ALJ noted the absence of work-related restrictions imposed by physicians who had seen Plaintiff prior to Dr. Siddiqui, the limited nature of the moderate symptoms that had been found, and the conservative nature of the treatment prescribed. This Court therefore finds that Plaintiff's argument that the ALJ placed undue emphasis on Dr. Siddiqui's opinion to be without merit.

12. Plaintiff further argues that the ALJ placed too much emphasis on the absence of objective medical findings and the conservative nature of her treatment in determining that Plaintiff is not disabled. (Pl's Mem of Law at 18). However, the ALJ expressly considered Plaintiff's complaints regarding her pain and the side effects from her medications, particularly those from Lortab, in his determination. Plaintiff claimed that she rarely left the house. (R. 24, 25, 39-41.) The ALJ found this inconsistent with her testimony, as Plaintiff detailed how she took her daughter to the bus stop, attended activities at her daughter's school, and shopped at the grocery store. (R. at 24-25, 40, 56). Furthermore, Plaintiff reported to Dr. Balderman that she was able to cook and clean. (R. at 24, 361). With respect to the allegations of pain, such as might be associated with fibromyalgia, the ALJ concluded, "[i]t is recognized that the claimant may experience some degree of pain and discomfort. However, mild to moderate pain or discomfort is not, in itself, incompatible with the performance of sustained work activity." (R. at 25-6). The severity of Plaintiff's subjective complaints was found by the ALJ to be inconsistent with her own testimony and reported complaints to various medical personnel, a finding supported by substantial evidence in the record. (R. at 26).

13. After carefully examining the administrative record, this Court finds that substantial evidence supports ALJ McDougall's decision, including the objective medical

8

evidence and medical opinions contained therein. This Court is satisfied that ALJ McDougall thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: August 23, 2015
      Buffalo, New York

      /s/William M. Skretny
      WILLIAM M. SKRETNY
      United States District Judge